UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| **PRYTIME MEDICAL DEVICES, INC.** )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>**CERTUS CRITICAL CARE, INC.** )<br>)<br>*Defendant.* )<br>) | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff Prytime Medical Devices, Inc. ("Prytime"), by and through its undersigned counsel, files this Complaint against Defendant Certus Critical Care, Inc. ("Certus" or "Defendant"), and alleges as follows:

## NATURE OF ACTION

1. This is an action for against Defendant for false advertising and unfair competition under the Lanham Act (15 U.S.C. § 1051 *et seq.*), for deceptive trade practices under Delaware statute (6 Del. Code § 2531 *et seq.*), for unlawful practices under the Delaware Consumer Fraud Act (6 Del. Code § 2511 *et seq.*), and for false advertising under Delaware common law.

## PARTIES

2. Plaintiff Prytime is a Delaware corporation having a principal place of business at 229 North Main Street, Boerne, Texas 78006.

3. On information and belief, Defendant Certus is a Delaware corporation with a principal place of business at 4505 Wasatch Boulevard, Suite 150, Salt Lake City, Utah 84124.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action under the Lanham Act, codified at 15 U.S.C. § 1051 *et seq.*, and in particular, 15 U.S.C. § 1121, as well as under 28 U.S.C. §§ 1331 1367.

5. This Court has personal jurisdiction over Certus because, on information and belief, Certus is incorporated in this Judicial District.

6. Venue in this District is proper over Certus under 28 U.S.C. §§ 1391(b) and (c) because, on information and belief, Certus is incorporated in this District.

## FACTS

7. Plaintiff Prytime is an innovative medical supply company specializing in novel occlusion catheters used to halt blood loss in emergency situations. Prytime owns numerous patents protecting this technology around the world.

8. Prytime currently markets and sells balloon catheter systems called Resuscitative Endovascular Balloon Occlusion of the Aorta: "REBOA". These systems allow medical professionals to temporarily occlude large blood vessels to support hemorrhage control in patients undergoing severe blood loss. Prytime's REBOA systems obviate the need for an invasive surgical procedure to control bleeding in certain cases, instead facilitating a minimally invasive procedure in which a medical professional can position and inflate occlusion balloons to desired parameters to control the hemorrhage.

9. Prytime's REBOA systems are sold to medical professionals and hospitals throughout the United States.

10. Prytime also regularly applies for and receives grant money from various governmental agencies to develop improvements to its products, including to its REBOA systems.

11.     Certus previously publicly advertised that it was actively seeking approval from the United States Food and Drug Administration for its Endovascular Aortic Control ("EVAC") System with a balloon catheter.  Certus advertised that its planned product would automate the necessary data collection and balloon inflation control steps based on the patient's blood pressure "beyond a medical professional's capabilities to manually measure and apply" (*See* Ex. A).  Such statements suggest that Certus's product would be superior to those then on the market, which require a level of manual physician control.

12.     As of October 2022, Certus falsely and misleadingly advertised that its EVAC System "is entering the FDA clearance process in 2022 and is anticipated to hit the commercial market in 2023."  (*See* Ex. A).

13.     Upon information and belief, potential customers have withheld purchases of Prytime's REBOA catheters in hopes of soon acquiring Certus's allegedly impending automated product.

14.     Upon information and belief, Certus's also received over $5 million in research grants from the U.S. Department of Defense for its EVAC System, based at least in part on its claim of an automated system that would soon be on the market.

15.     Further, upon its launch in the United States, the EVAC System with a balloon catheter will be directly infringing at least claim 1 of Prytime's U.S. Patent No. 11,253,264 ("the '264 Patent") and will compete directly with Prytime's REBOA catheters, reducing Prytime's market share and causing irreparable harm to Prytime.

16.     Based on Certus's impending infringement, Prytime's counsel wrote to Certus on July 27, 2022, demanding Certus cease and desist any potentially infringing activity.  Certus declined to take any action in response.

17. Prytime was therefore forced to file suit against Certus on October 13, 2022 seeking a declaratory judgment that the EVAC System will, upon launch, infringe the '264 Patent. *See* Civil Action No. 1:22-cv-01352-RGA filed in the U.S. District Court for the District of Delaware.

18. Only after Prytime filed suit did Certus attempt to correct its false and misleading advertising. Once in a legal proceeding where it was forced to follow the Federal Rules of Civil Procedure and only represent truthful statements to the Court, Certus publicly stated its true development timeline – that as of December 2022, it did not even have a final product design, let alone a filing for approval by the U.S. Food and Drug Administration. *See* C.A. 1:22-cv-01352-RGA, D.I. 11, at 4 (Dec. 5, 2022). Certus further confirmed that despite its prior advertisements, it did not anticipate a commercial release in 2023, but rather, its product would not be available until at least "mid-to-late 2024." *Id*.

19. Upon information and belief, Certus intentionally and willfully misrepresented the status of its product development and launch timeline in order to encourage others to fund that development.

20. Only after Prytime filed a patent infringement lawsuit (C.A. 1:22-cv-01352-RGA) in the United States District Court did Certus revise its internet-based advertisement to say "[t]he EVAC system for hemorrhage is entering the FDA clearance process…" (see Ex. B), a statement which conflicts with the Declaration of Michael Austin Johnson (one of Certus's founders). *See* C.A. 1:22-cv-01352-RGA, D.I. 13.

21. Dr. Johnson declared on December 1, 2022, that "Certus cannot submit a 510(k) application to the FDA for the EVAC system until it has a final design and has completed all

4

required testing for the 510(k) application. Certus has no target date for a design freeze of its EVAC system." See C.A. 1:22-cv-01352-RGA, D.I. 13.

22. Certus then further revised its internet-based advertisement to state "[t]he EVAC system for hemorrhage has not entered the FDA clearance process. EVAC for cardiac arrrest (*sic*.) and stroke is currently in product development and is slated for future clinical trials, ahead of a de novo 510(k) application for approval." See Ex. C.

23. After evaluation of Certus's revised advertising, as represented to the Court in C.A. 1:22-cv-01352-RGA, Prytime filed a motion to dismiss the patent infringement suit on January 17, 2023 (*See* C.A. 1:22-cv-01352-RGA, D.I. 17) and the Court dismissed the case on January 18, 2023 (*See* C.A. 1:22-cv-01352-RGA, D.I. 18).

## COUNT I
## False Advertising
## 15 U.S.C. § 1125(a)

24. Plaintiff Prytime realleges and incorporates by reference paragraphs 1 through 23 of this Complaint as if fully set forth herein.

25. This claim is brought under 15 U.S.C. § 1125(a).

26. Certus's claims regarding the status of its application for FDA approval and the anticipated launch date were literally false and misleading.

27. The general public, including at least a portion of potential customers of the EVAC system, Prytime's REBOA system, healthcare providers, doctors, government agencies, and/or potential investors, was or was likely to be deceived by Certus's false claims because Certus represented that it had applied for FDA approval and its product would soon be on the market, when neither of those things was true.

28. The deception caused by Certus's statements was material. The statements were highly likely to cause customers to withhold purchases of Prytime's REBOA system in

anticipation of Certus's allegedly forthcoming EVAC system, and upon information and belief customers did do so. Further, the statements were highly likely to cause government agencies, such as the U.S. Department of Defense, to award grant money to Certus to quickly bring its product to market, and upon information and belief, the agencies did do so to the detriment of Prytime, which could have been awarded such grant money for its ongoing research and development.

29. The advertisements regarding the EVAC system were made on the Internet, and thus were made in interstate commerce and in anticipation of making sales in interstate commerce.

30. Prytime has therefore been harmed by Certus's false advertising in an amount to be determined at trial. Prytime's harm includes potential lost sales, potential lost grant money, potential lost investment, the cost of any advertising necessary to correct the public's impression of Certus's product, and the cost of bringing Civil Action No. 1:22-cv-01352-RGA for declaratory judgment when in fact, the dispute was not ripe.

31. Further, should Certus continue to make false and/or misleading statements regarding the availability and/or regulatory status of its products, Prytime cannot be adequately compensated by monetary remedies alone. Prytime is therefore entitled to injunctive relief against Certus pursuant to 15 U.S.C. § 1116(a).

## COUNT II
**Unfair Competition**
**15 U.S.C. § 1125(a)**

32. Plaintiff Prytime realleges and incorporates by reference paragraphs 1 through 23 of this Complaint as if fully set forth herein.

33. This claim is brought under 15 U.S.C. § 1125(a).

34. Certus's claims regarding the status of its application for FDA approval and the anticipated launch date were false and misleading and are or were likely to cause confusion in customers or investors.

35. The general public, including at least a portion of potential customers of the EVAC system, Prytime's REBOA system, healthcare providers, doctors, government agencies, and/or potential investors, was or was likely to be deceived by Certus's false claims because Certus represented that it had applied for FDA approval and its product would soon be on the market, when neither of those things was true.

36. The deception caused by Certus's statements was material. The statements were highly likely to cause customers to withhold purchases of Prytime's REBOA system in anticipation of Certus's allegedly forthcoming EVAC system, and upon information and belief customers did do so. Further, the statements were highly likely to cause government agencies, such as the U.S. Department of Defense, to award grant money to Certus to quickly bring its product to market, and upon information and belief, the agencies did do so to the detriment of Prytime, which could have been awarded such grant money for its ongoing research and development.

37. The statements regarding the EVAC system were made on the Internet, and thus were made in interstate commerce and in anticipation of making sales in interstate commerce.

38. Prytime has therefore been harmed by Certus's unfair methods of competition in an amount to be determined at trial. Prytime's harm includes potential lost sales, potential lost grant money, potential lost investment, the cost of any advertising necessary to correct the public's impression of Certus's product, and the cost of bringing Civil Action No. 1:22-cv-01352-RGA for declaratory judgment when in fact, the dispute was not ripe.

39. Further, should Certus continue to make false and/or misleading statements regarding the availability and/or regulatory status of its products, Prytime cannot be adequately compensated by monetary remedies alone. Prytime is therefore entitled to injunctive relief against Certus pursuant to 15 U.S.C. § 1116(a).

**COUNT III**
**Deceptive Trade Practices**
**6 Del. Code § 2531** *et seq.*

40. Plaintiff Prytime realleges and incorporates by reference paragraphs 1 through 23 of this Complaint as if fully set forth herein.

41. This claim is brought under 6 Del. Code § 2531 *et seq.*

42. Certus's claims regarding the status of its application for FDA approval were false and misleading and are or were likely to cause confusion in customers or investors, in violation of 6 Del. Code § 2532(a)(2).

43. Certus's claims regarding the status of its application for FDA approval and the anticipated launch date were representations that its products have characteristics that they do not have, in violation of 6 Del. Code § 2532(a)(5).

44. Certus's claims regarding the status of its application for FDA approval and the anticipated launch date implicitly disparage Prytime's REBOA system by misrepresenting that fully automated products would be FDA approved and for sale in 2023, when they are not, in violation of 6 Del. Code § 2532(a)(8).

45. Certus's claims regarding the status of its application for FDA approval and the anticipated launch date were literally false and misleading and are or were likely to cause confusion or misunderstanding in customers or investors, in violation of 6 Del. Code § 2532(a)(12).

8

46. Certus's claims regarding the status of its application for FDA approval and the anticipated launch date were also made in the course of its business.

47. Upon information and belief, Certus's inaccurate statements were a willful attempt to solicit funding from customers who otherwise would have purchased a Prytime product, and therefore, caused Prytime reputational harm.

48. Prytime may be irreparably damaged if Certus's false and misleading statements are not enjoined. Prytime therefore seeks injunctive relief against Certus pursuant to 6 Del. Code § 2533(a), prohibiting Certus from representing that its products will be FDA approved or available for sale at any date prior to a decision by the FDA approving such product for use in the United States.

49. Due to Certus's willful violation of this Act, Prytime seeks its attorneys' fees incurred in this and the prior action.

50. Pursuant to 6 Del. Code. § 2533(c), Prytime will seek trebling of any monetary damages awarded pursuant to common law or other Delaware statutes.

<u>COUNT IV</u>
**Delaware Consumer Fraud Act**
**6 Del. Code § 2511** *et seq.*

51. Plaintiff Prytime realleges and incorporates by reference paragraphs 1 through 23 of this Complaint as if fully set forth herein.

52. This claim is brought under 6 Del. Code § 2525.

53. Certus's claims regarding the status of its application for FDA approval and the anticipated launch date were false and misleading and are or were likely to cause confusion in customers or investors, in violation of the Delaware Consumer Fraud Act.

54. Certus intended that the general public, including at least a substantial portion of potential customers of the EVAC system, Prytime's REBOA system, healthcare providers,

9

doctors, government agencies, and/or potential investors, would be deceived by Certus's false claims because Certus represented that it had applied for FDA approval and its product would soon be on the market, when neither of those things was true.

55. Certus's statements were highly likely to cause customers to withhold purchases of Prytime's REBOA system in anticipation of Certus's allegedly forthcoming EVAC system, and upon information and belief customers did do so. Further, the statements were highly likely to cause government agencies, such as the U.S. Department of Defense, to award grant money to Certus to quickly bring its product to market, and upon information and belief, the agencies did do so to the detriment of Prytime, which could have been awarded such grant money for its ongoing research and development.

56. Further, Certus's statements were deliberately vague in not specifying when in 2023 its product would be approved and for sale, and thus were intended to prevent or delay any action by Prytime. Certus's refusal to revise its statements after Prytime's cease-and-desist similarly demonstrate an intent to ward off legal action by Prytime. In both cases, upon information and belief, Certus's intent was to continue to solicit funding in advance of a product launch that was aspirational at best.

57. Prytime has therefore been harmed by Certus's prohibited trade practices in an amount to be determined at trial. Prytime's harm includes potential lost sales, potential lost grant money, potential lost investment, the cost of any advertising necessary to correct the public's impression of Certus's product, and the cost of bringing Civil Action No. 1:22-cv-01352-RGA for declaratory judgment when in fact, the dispute was not ripe.

58. Prytime may be irreparably damaged if Certus's false and misleading statements are not enjoined. Prytime therefore seeks injunctive relief against Certus pursuant to 6 Del. Code

§ 2523, prohibiting Certus from representing that its products will be FDA approved or available for sale at any date prior to a decision by the FDA approving such product for use in the United States.

## COUNT V
## Unfair Competition
## Delaware Common Law

59. Plaintiff Prytime realleges and incorporates by reference paragraphs 1 through 23 of this Complaint as if fully set forth herein.

60. Prytime maintains a reasonable expectation of continuing to sell its REBOA systems to healthcare providers and hospital systems and of continuing to obtain additional grant money from governmental agencies to develop improvements to its REBOA systems.

61. Certus's claims regarding the status of its application for FDA approval and the anticipated launch date likely have and will continue to deceive healthcare providers, hospital systems, doctors, insurance providers, governmental agencies, potential investors, and the general public into believing it will soon provide an improved EVAC system for sale.

62. Prytime was harmed in an amount to be determined at trial by Certus's statements in that it likely has and will continue to prevent Prytime from making further sales of the REBOA systems, since potential customers may falsely believe an improved product is forthcoming from Certus.

63. Prytime was also harmed in an amount to be determined at trial by Certus's statements in that government agencies providing grant money for research and development may falsely believe that Certus is further ahead in competition with Prytime than it truthfully is.

64. Prytime was further harmed in an amount to be determined at trial by Certus's statements through a loss of goodwill in that the public at large may believe that Certus, which

11

claimed to have an improved product forthcoming, is the market leader in the field, when it is not.

  65. Certus's activities described above have at all times been willful and/or knowing.

## JURY DEMAND

  66. Plaintiff hereby demands a jury trial on all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Prytime prays for judgment in its favor and against Defendant Certus for the following:

  (a) An order declaring that Defendant's unauthorized conduct violates the Lanham Act, 15 U.S.C. § 1125(a); 6 Del. C. § 2532; 6 Del. Code § 2525; and Delaware common law;

  (b) An order permanently enjoining and restraining Defendant and those in active concert and participation with Defendant from representing that its products will be FDA approved or available for sale at any date prior to a decision by the FDA approving such product for use in the United States;

  (c) Any damages suffered by Prytime and all profits received by Defendant as a result of Defendant's violation of the Lanham Act, as provided for in 15 U.S.C. § 1117 ;

  (d) Prytime's costs, pursuant to 15 U.S.C. § 1117;

  (e) Trebling, pursuant to 6 Del. C. § 2533(c), of any damages awarded in this Action under the Delaware Consumer Fraud Act or common law;

  (f) Prytime's attorneys' fees in connection with this action, due to Defendant's willfully deceptive trade practices;

  (g) Any monetary remedies allowed by the law for Defendant's unfair competition under the common law and violations of the Delaware Consumer Fraud Act; and

  (h) An award of such other and further relief, at law or in equity, as the Court may

deem just and proper.

                                                 **PANITCH SCHWARZE BELISARIO & NADEL, LLP**

Dated: <u>January 18, 2022</u>        By: */s/ John D. Simmons*
                                                   John D. Simmons (Bar No. 5996)
                                                   Keith A. Jones (Bar No. 7011)
                                                   Wells Fargo Tower
                                                   2200 Concord Pike, Suite 201
                                                   Wilmington, DE 19803
                                                   Telephone: (302) 394-6030
                                                   Facsimile:   (215) 965-1331
                                                   jsimmons@panitchlaw.com
                                                   kjones@panitchlaw.com

                                               *Attorneys for Plaintiff Prytime Medical Devices, Inc.*